Good morning, Your Honor. Good morning. Can you all hear us? Yes, Your Honor. Mr. Matsui, can you hear us? Yes, I can, Your Honor. All right. Counsel for Appellate, please proceed. Thank you, Your Honor. Good morning, and may it please the Court, Jeremy Glapion, on behalf of Plaintiff Cindy Boulton, I'd like to reserve two minutes for rebuttal, and I'll do my best to watch my time. All right, Counsel. We are here on a de novo review of the District Court's dismissal of four claims, three under the California Invasion of Privacy Act and one under the Electronic Communications Privacy Act. For the dismissal of three of those claims, two under SIPA and one under ECPA, we believe that the District Court misconstrued our allegations or, at minimum, did not construe the allegations in the light most favorable to plaintiffs, as should be the case on a motion to dismiss. And we believe the fourth claim, the SIPA 632 claim, the District Court adopted what amounts to a very broad but we believe to be erroneous statutory interpretation that would exempt from the definition of confidential, essentially any written communications. But I first want to start with this concept of transit and whether the text messages that our client intended for this celebrity or, as community calls them, community leaders, was in transit at the time it was acquired by community. This is relevant to SIPA Section 631 and required for ECPA. In 2002, this court in the Konop v. Hawaiian Airlines case expressly found that to qualify as an interception, the communication must be acquired during transmission. And it found that consistent with the ordinary meaning of intercept, which is to stop, seize, or interrupt in progress or course before arrival. And it's this concept, before arrival, where we think that there is an ongoing misunderstanding because this is precisely what we allege about these messages. Because when we talk arrival or receipt in our complaint, we're not talking about arrival at the celebrity's eyeballs or where the celebrity actually retrieved it. We're talking about arrival at that point where they could have ever accessed it. Even if they were waiting with bated breath for this text message, looking at this location, it never reached that point. Well, did it not go to the number that was listed on the invitation? It did not. We don't think it's as simple. The way their system is constructed, which I think is a highly technical question, it seems to be constructed in a way where there is multi-step. So, it hits some sort of checkpoint and says, did the sender sign up? If the sender did sign up, the message is allowed to continue on its journey to that final destination, which is where the owner, or at least I guess you could call them the lessor of the number, could access it. If the sender did not sign up... With respect, I don't think you answered Judge Rakoff's question. He asked you whether the text went to the number that was listed on the invitation. And I think the answer to that is yes, is it not? I don't think so, Your Honor. Why is that? Because to get... I think that sort of assumes the issue, which is that it went as part of the process to getting to that final number. The way we perceive that final number... What was the final number? Again, I struggle, apparently, as my colleague does. As I understand it, the invitation had a number which was X. Your client had an anticipation that it would be to the celebrity. But the reality is it went to the number that was listed. Now, what happened after that is a different issue. But when you talk about transit, isn't the issue of what the number was and what was received and whether it was intercepted in transit an important factor? It is. But I think what the main issue with this is is that there were two, apparently two different destinations depending on when someone signed up. So the concept of did it go to the number, well, if it went to the number in this circumstance, but it was going somewhere different in a circumstance where they signed up, that's a question of which one actually constitutes that final destination. And I think that's where the hangup is. Forgive me. What you just said doesn't make any sense to me. Would you please explain it again?  Sure. So the way their system works, and this is something they put in their response brief, and I think maybe their language is best to explain it, is that community members text the community leaders at their community number. Leaders can access and respond to those messages through community's platform. If an individual does not sign up and agree to those terms of service, however, their messages do not appear on the platform. That, to us, the platform that they refer to in their response brief in that context, that is the number. That is the destination. But, again, I understand. You're a good lawyer and you're trying to argue for something different than what, to me, the words say. The words say, you know, if you want to reach this, you've got to text this community number. That's what happened. The community got it. And if you listen to the rest of it, it suggests that if you sign up for something, then it will be passed on to the celebrity who may respond through the community number. But the, if you will, the hub was the community number. And if I understand the facts correctly, your client texted what I'll call the hub. It was received there. That was the intended destination as far as the number is concerned. Is that correct? I don't believe that is correct. But I also don't want to fight the hypothetical because I understand this perspective. The best analogy for this, and I don't want to, we don't think that community is anything like a Verizon or an AT&T or communications carrier. But if you're texting, if you're on Verizon and you're texting someone on AT&T and it hits AT&T's server and AT&T says, well, you're not an AT&T subscriber. We want you to sign up for AT&T. Sign up for AT&T or we won't pass your message along. The message didn't reach the AT&T number. And in this analogy, we're saying that community, at least in this intermediary context, is more like that AT&T, not the end user. Well, again, I take your point. But you don't have that with AT&T and Verizon. You don't have a document that says if you send something to AT&T, we're going to see if Verizon wants to talk to you. Whereas in this case, if I understand it correctly, the ad, if you will, says text this number and then community will pass it on to the celebrity who may respond to you if you've signed up. Now, that's different than your AT&T and Verizon example, if I'm understanding it correctly. Isn't that right? I think it's different in some ways, but I think in the most meaningful way or the way that's relevant to this case, it's not. Because I think the community is acting as this intermediary or ostensibly as an intermediary where they assign numbers to these celebrities. But again, I guess what I'm trying to say is that what you read from what was posted makes that clear. There's nothing in there, at least as I understand it, that says when you text this number, you're going to be talking directly to the celebrity and the celebrity is going to contact you directly without any reference to community or any sign-up or anything. Quite the contrary. They say you send it to this number, and if you sign up, the celebrity can return it to you through community's number. Isn't that correct? I think that's not. So first of all, the only thing that our client knows about what they're sending is what the celebrity put out. In this particular factual circumstance, and in most that we looked at, what the celebrity puts out is, this is my phone number. Text me. I'll respond. We'll talk, or et cetera, et cetera. Right. So there may be an aspect of false advertising there, but that's not the claim you're bringing. So your clients may have been misled into believing that they would talk directly to the guy, but under the statutes that you're proceeding, the question is whether when they access that number in response to the invitation, they were going to the number that was indicated or whether, in root, it was intercepted. And what I think Judge Smith is saying is it wasn't intercepted. It went to that number, but the arrangement, the company had, in effect, which we could sort of understand, but they didn't disclose it, kind of a screening to keep out crazy people and stuff like that. So when you access that number, the message would go to that number. It wouldn't be intercepted, but community would then look it over and see whether it's appropriate to pass on to the celebrity. Isn't that the way it worked? I think in part, but I think there's still an issue here of, one, it's sort of a side question of, but this is not the only reason they were looking at these messages. They expressly say, you know, this is for marketing. You give us royalty-free use of these messages. So while there was ostensibly a component of let's protect our clients, it was also for their revenue and business generation. Okay, I accept that, but it's still, the point is you call the number, you get the number, or in this case you attach the number. There's no interception on the way. I think the core question on that, and I think this is something that we don't know because it's a very technical workings of the system, is that there is indisputably a subsequent step on the journey to where it could be perceived for this message to take. I don't think there's any way around that. Once you sign up, the message has somewhere else to go. So the question is, does that somewhere else to go render the message still in transit, or does this checkpoint essentially serve to terminate transit? And our position is that so long as there is an additional step on the journey, transit is not complete, even though it's sitting at this server sort of idling, waiting for you to sign up. It's like if you're at a gated community and you're asked to show your ID. You've done your transit just because you're at the checkpoint. You're showing your ID. They let you through, and then you get to your destination. That's what we would like the server to function as. I get your point, but surely you can see why the construction of transit that the district court put on this is also perfectly reasonable, can you not, given the writing that was put out there? I think it's reasonable if we're adopting the construction of how their system functions, which is something that comes sort of a one-sided perspective from their position. I think there's enough technical aspects to how this actually functions, of whether this was actually the destination of the number or whether this was an intermediary checkpoint server. Oh, wait. Let me understand your argument here. Supposing if you call, you get this invitation from a celebrity, you know, call my number. You call the number, and you get that number, and the person who answers the number is the secretary. Hello, I'm Mr. Celebrity's secretary. Can I help you? And then the secretary either passes it on or not, depending on whether she thinks you're legit or not. Is that a violation of your statutes? No, because in that scenario, the communication, you dial a number. It completed the transmission. What we're not alleging is that it got to from A to B. Let me get on the camera. It got from A to B, and then it, you know, something happened at B. Like all of the cases about emails and bulletin board stuff deals with something happening after it hit that point B. What we're alleging is that you had something along this pathway, this transmission pathway, that said, did you sign up? No, you're going up here, and you're sitting right there. It never reaches this point B. That's our position. I think you have well articulated your point, whether we agree is another matter, but let me just go to a separate issue. Why is it really reasonable that Ms. Bolton thought that her text to a stranger she'd never met, along with millions of other people, would be in quotes confidential under the statute? Because confidential doesn't have to have anything to do with what the end user of the communication can or does do with that communication. The California Supreme Court and the appellate courts have been very clear on this point that subsequent dissemination is irrelevant to the confidentiality analysis. That's not my question. My question is how could your client assume that this was remotely confidential given the nature of the invitation and the number of people that arguably would be responding to this same invitation? Well, I don't think confidentiality has to do with how many other people are texting this number. Confidentiality has to do with whether her particular message will be read by someone else in real time. It's that firsthand dissemination and control that matters. So that doesn't matter whether the recipient is super popular or just their mother. I mean, the whole business model of community, which manifested through the way these celebrities put out their number, was to give the appearance of text a celebrity like you're texting your best friend or mother, and they worked with these celebrities, as we allege, to put their numbers out in that way to give that appearance of confidentiality. So it's not about who the celebrity was. It's more about was anyone – were you deprived of your firsthand dissemination of your message? And we don't think there's anything about a written communication or about the recipient that changes that analysis, which the Supreme Court has repeatedly adopted. I'm not sure the analogy of LL Cool J to someone's mother is a perfect analogy. We agree, but that's the business model that they put out. I agree with that. All right. Thank you, counsel. We'll give you a couple minutes for rebuttal. Thank you, Your Honor. Mr. Matsui? Mr. Matsui? Is he frozen? Yeah, he's frozen. Thank you, Your Honor. There he is. I'm sorry. Go ahead. You're breaking up. I think you were mute for a minute, but you may not be a mute anymore. I apologize. I apologize. The district court correctly dismissed plaintiff's claims. Counsel, for the record, could you just state your name and who you represent? Certainly, Your Honor. I thought I did that. Maybe I broke up at that moment. We support Brian Matsui on behalf of community.com. He dismissed plaintiff's claims under the Federal Wiretap Act and the California Invasion of Privacy. You're breaking up, Mr. Matsui. Okay. I apologize for that, Your Honor. I believed I had a stable internet connection in the office. Is it possible for me to try to disconnect and reconnect? We'll have to ask our team. All right. Let's see if that works. Okay. Could you stop the clock, please, Madam Clerk? Apologies, judges. I was dealing with a different courtroom. Is there an issue? She's breaking up. Mr. Matsui is breaking up. He's trying to call back in and reconnect.  I will wait for them to reconnect. Thank you, Judge. Thank you, Kelly. So, Judge Rakoff, you think that LL Cool J and your mother are different? Well, yeah, of course my mother was a wonderful entertainer, but perhaps in a different style. Here comes Counsel Matsui. All right. Thank you. Thank you, judges. All right, Mr. Matsui. Let's try it again.  Thank you, Your Honor. I appreciate the opportunity to try again. I just would like to say, you know, the crux of the plaintiff's appeal here is that she wanted to communicate directly with the celebrity, LL Cool J, and she felt that she was effectively tricked by a TikTok video into sending a message to his community number instead of his personal one. Whatever disappointment she might have with what happened there, that's not a violation of criminal law that she says the community violated. And I'd like to begin where most of the court's attention was spent on the wiretap act, and then briefly discuss some of the county state law issues. I think that as this court question sort of like indicated, the key issue here is whether or not there was an interception during transmission, because the wiretap act and section 631 require an actual interception of an electronic communication during the communication transmission itself. And we know that that's not what happened here because the electronic communication reached the number that plaintiff sent the text message to. Much of her allegations in the complaint indicate that she directed the text to LL Cool J's community number, and then the community number received that text. Her real complaint is that LL Cool J, the individual, the person, the celebrity didn't actually receive and look at that text message. Well, there's nothing in the wiretap act that would address a situation like that. Now, it could be that like in certain situations once a message is in, you know, storage then you have laws that deal with electronic communications that are stored. But the wiretap act deals completely with claims that have, with transmissions that happened, electronic communications that happened during transmission and that they have to actually be intercepted. I think it's important also just to take a step back and look that much of plaintiff's arguments seem to be based upon what the plaintiff's intent was here, that the intent was to send something to LL Cool J's number. Well, she sent a text one text only to the number that she received on the TikTok video, which was to the community number that was associated with LL Cool J. I think, I think an argument could be made that your client misled her and others by not making clear that if you call this number, you're going to have to sign up for this and provide that and so forth. But that's not the claim that's being made here. I mean, I don't, I think that what community did was explain that this is how you create this dialogue. But what happened here was just one text message. And what was brought was a wiretap act claim. And that's something that requires an interception. It's a criminal law. And I think that given that it's a criminal law, what this court hold would create open the door to numerous situations. For example, if stalkers decide to text people, then services that could block the stalker would end up being in a situation where they could end up being liable under federal criminal law. And that's not what Congress intended here. And that's why you have to have an interception during the transmission itself. As you know, with the course, the exception of the 18 USC 25, 11, 11, a claim. These are all California state law construction issues. It appears that there's not too much definitive law in California on the issues that are raised in this particular case. Would you agree with that? Or do you think that the issue of what was in transit in this case is clearly defined under California case law? I think it is clearly defined. I mean, I think that to take a step back, I think that when you look at the text of the statute, it's very clear that you have to have. That's a different, that's a different issue. I understand your construction of the statute. What I'm saying is have the California courts construed the statute at issue here in such a way that we can with confidence apply what they have said to the facts in this case. I think it depends entirely on how narrow one were to look at the facts of the case. There certainly is California law that would apply in situations where whether a telephone conversation has been overheard in situations like that. But what I think what that underscores is that there's a disconnect between what plaintiff has alleged in this complaint and this, for example, the 631 issue with respect to, you know, what constitutes in transit is I think that, you know, your honor, if you're alluding to sort of the slightly different language of, you know, while being received in section 631, that really is meant to capture situations where someone's overhearing something on the telephone. They're trying to capture the fact that. And I understand. I understand that potential construction. My question to you is we're a federal appellate court. We're doing except for the issue of the 25111A claim. We're dealing with matters of California statutory law to the degree that California case law does not clearly address or by analogy addresses the case. We can, of course, if there's case law in the courts of appeal that we can predict with some degree of certainty what the California Supreme Court would do, we can construe that, but we're really not generally advised to do and not really much at liberty to be construing California law if there is no guidance in that regard. So my question to you again is what California case law would you refer us to in each case here that would be, from your perspective, at the very least an invitation to us to follow what the guidance of the California courts of appeal have provided or to the degree appropriate, the California Supreme Court. And my question is clear. Yes. Yes, you are. I understand. So I think that for the 631 claim, it probably would be a people versus Wilson would be a case that the court could, could follow. I also would just like to, of course, emphasize that when this, when this court predicts what the California Supreme Court does, it does it both on case law and based upon what the text of the statute, you know, would read. And I think that with some, there'll be a lot of confidence in the court being able to understand that the text of the statute makes clear that it would have to be an interception both before and after, before it was received. Yeah. You're talking about the way the statute ought to be construed. My question to you again is I gather you are saying that if we take each of these California statutes, that there is California case law that gets you to where you want to get, we can construe it appropriately. And given our role as a federal appellate court, is that right? I believe that. Yes, Your Honor, that's correct. And I was going to say for section six 32, for example, there is the California Supreme Court Smith case, which has a footnote in dicta, which indicates that things like facilities, facilities and texts are not inherently confidential communications. Again, that's dicta. But I think that this court would follow California Supreme Court dicta. It's a, it's a good indication of what the California Supreme Court would end up doing. So I, I believe that when you look at these claims that plaintiff is bringing, there is California appellate court precedent, which would provide guidance along with the text of the statute, which would make clear that, that you do not have any sort of claim based upon sort of interception over the wire or, or for invading privacies with respect to text messages while they're in transit, which is how these claims are, are being based. The last thing, you know, I'll say is that with respect to the six 32 claim, which the court discussed a bit on whether or not there was a confidential communication. I don't think that there are any plausible allegations that you could have a confidential communication when you send a text message to a celebrity based upon a number that you hear in a tick tock video. But even if, even if we were to say that based upon that, there is California law based upon the Smith decision, based upon the Nikai decision, which indicates that when you have electronic communications like emails and texts, they are not subject to any sort of reasonable expectation of confidentiality because there are things that just can be so easily shared. And so the California courts have indicated that you don't have a six 32 claim when you're dealing with things like emails and text messages. If there are no further questions, we would ask the court to affirm. All right. Thank you, counsel. Let's give two minutes for rebuttal. Thank you, your honor. I just want to touch on a couple of quick items. I think the one item, cause you, your, your honors had continuously asked, you know, did this get to the community number? And I think again, this is given that we're dealing with this sort of modern and sort of,  cutting edge sort of approach of how this number functioned. It's a very highly technical question of whether it actually reached the community number or some intermediate step before it reached what is conceived or perceived as the community number from community perspective. I hear what you're saying, but I don't find it be at all highly technical. If the number was X, she texted to X and it was received by X. What's highly technical about that? I think what's highly technical would be sort of what some of these courts that talked about the difficulty of intercepting electronic communications touch on. And I think the Yaki court touches on it as well. When there is this automatic rerouting process sitting on the stream of possible avenues that you haven't, you haven't alleged that in your complaint, that it's automatic rerouting. We, we do say that they rerouted withheld them from the intended. Yes, that's a different point, but you don't say that it did not reach the number that it was sent to, which would be what a rerouting would be. And I don't, I didn't see anything in the complaint to that effect. If we didn't plead it that clearly, I think that's something we absolutely could and would plead. But again, we were dismissed on first instance with prejudice. And I don't, I think while it is a tough question, what would be your basis for making that assertion? I think similar to what happened with the, if it functions, if this is functioning akin to an API, like we saw in Yaki where it hit a chat, it hit the server intermediary before it hit the actual destination. I think that's an example of where this intermediary is maybe part of that transmission, but it's not the Nessus is not the actual destination. So I think something like that is the analogy that we would draw here. And, and, and I just do want to quickly say, if, if I can have another 30 seconds that while transit is fatal to the ECBA claim, if there's no transit, there's no ECBA claim. We can see that. We do think under SIPA 631, there is this alternative temporal attainment process where it was being sent from or received in California. I don't think there's a dispute that it wasn't received by the intended recipient. And I don't know of any California case law that discusses what that particular receipt in the process of being received means. And I think there's a window here where that could be a distinction between something in transit and something being received. If it's stuck on this server, pre-sign up. All right, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, SMITH, Rakoff